IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

          Plaintiff

and

MICHELLE HARTNESS,

          Plaintiff-Intervenor,

  v.

STATE OF WISCONSIN, DEPARTMENT
OF MILITARY AFFAIRS,

          Defendant.

OPINION AND ORDER

23-cv-60-wmc

---

Plaintiff contends that defendant Wisconsin Department of Military Affairs ("WDMA") violated Title VII, 42 U.S.C. § 2000e-2(a), by offering a lower salary to plaintiff-intervenor Michelle Hartness than to similarly or less qualified men. The case is now set for a jury trial beginning on June 24, 2024. In advance of the final pretrial conference ("FPTC"), scheduled for tomorrow, June 4, 2024, at 3:30 p.m., this order addresses the parties' motions in limine (dkt. ##92, 96-103).

OPINION

I. **Plaintiff's and Hartness's motions in limine (dkt. ##96-103)**

    1. **Treat witnesses associated with WDMA as adverse.**

WDMA does not oppose plaintiff and Hartness asking leading questions during their direct examinations of Joane Mathews, Michael Hinman, Donald Dunbar, Allisa Brown, Gregory Engle, Stacie Ann Meyer, and WDMA's corporate representatives. Thus,

the motion is GRANTED in part as to those witnesses. However, WDMA objects to plaintiff and Hartness asking leading questions of Brian Satula, asserting that he is a friendly witness to them. Specifically, WDMA points out that Satula is not listed on its witness list; plaintiff and Hartness list him as a "will call" witness; his deposition transcript shows that he is not a hostile witness; and he cooperated with a seven-hour deposition.

"[A] witness is most likely to be treated as adverse where he or she was employed at the time of the incident in question and had a hand in the incident that resulted in suit." *Gibbons v. Vill. of Sauk Vill.*, No. 15 CV 4950, 2017 WL 4882334, at *4 (N.D. Ill. Oct. 30, 2017). Here, while Satula was part of Hartness's selection and salary-setting panel, it is hard to say that he had a hand in the alleged discrimination against her, as he advocated for her to: receive a higher salary (ex. 55 (dkt. #41-17) 2); and be considered during the second round of hiring. (Ex. 67 (dkt. #57-34) 2.) Nevertheless, the court RESERVES in part, so plaintiff and Hartness can proffer evidence that Satula is an adverse witness at the FPTC or to the extent Satula may prove adverse at trial.

**2. Sequester all witnesses except Hartness.**

Plaintiff and Hartness seek to sequester all witnesses, other than Hartness, from attending the trial or being present in the court before completion of their testimony. WDMA does not oppose a general sequestration order, but opposes sequestering Mathews, who it intends to designate as its corporate representative at trial. Further, WDMA opposes excluding witnesses from the courtroom during opening statements.

Federal Rule of Evidence 615 provides that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses'

testimony." Fed. R. Evid. 615(a). However, the rule does not authorize excluding "a party who is a natural person" or "one officer or employee of a party that is not a natural person, if that officer or employee has been designated as the party's representative by its attorney." *Id.* R. 615(a)(1)-(2). Accordingly, the motion is GRANTED in part as unopposed and DENIED in part -- the court will not sequester Hartness and Mathews, while other witnesses will be sequestered. In addition, except for Hartness and Mathews, no other witnesses will attend opening statements so as to avoid the need for them to rise and exit should the court proceed immediately to witness testimony or unnecessarily risk tainting or changing their testimony based on plaintiff's or defendant's opening statements. Finally, this order shall extend to any discussion between counsel or called witnesses with as yet uncalled witnesses about statements, remarks or testimony made by other witnesses at trial.

**3. Exclude evidence and argument about Mathews' sex and race.**

Plaintiff and Hartness also argue that Mathews' sex and race is irrelevant to whether she discriminated against Hartness. WDMA states that it will not argue that Mathews is legally incapable of engaging in sex discrimination, but it also asserts that the jury is entitled to know about her "career and characteristics of diversity."

Here, it would appear that WDMA intends to argue that Mathews' "characteristics of diversity" are relevant to her credibility, but such an argument would only lead the jury to the improper inference that Mathews did not discriminate against Hartness because they are both women. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("it would be unwise to presume as a matter of law that human beings of one definable group

3

will not discriminate against other members of their group" (quotation marks omitted)). Absent a proffer of Mathews' habit of affirmatively looking out for sex discrimination in her job duties under Fed. R. Evid. 406, this evidence will be excluded. Accordingly, the motion is GRANTED.

**4. Exclude evidence and argument regarding Michelle Hartness's earnings after 2019.**

Plaintiff and Hartness move to exclude her post-2019 earnings from all phases of the case, arguing that her post-2019 earnings are not relevant because she is only seeking backpay from 2017 to 2019. They further assert that such evidence would be more prejudicial than probative, as the jury could infer that WDMA's discrimination actually improved her salary. In response, WDMA asserts evidence that Hartness's 2020 compensation exceeded what she would have earned as Bureau Director is relevant because it would weaken Hartness's expected testimony that "she suffered emotional pain, humiliation, anxiety and lack of confidence that makes her question everything to this day."

Hartness's earnings were as follows:

| Year | Employer | Earnings |
|---|---|---|
| 2017 (through September) | WDMA | $58,377.64 |
| 2017 (through December) | Ascension | $20,031.88 |
| 2018 | Ascension | $79,479.67 |
| 2019 | Ascension | $79,689.79 |
| 2020 | Ascension | $97,180.03 |

4

| 2021 | Ascension | $109,723.74 |
| 2022 | Ascension | $130,983.00 |
| 2023 (through November) | Ascension | $145,473.13 |

(Dkt. #115, at 5.)

To begin, plaintiff and Hartness may be asking the court to preclude itself from considering evidence of Hartness's post-2019 earnings at any stage of the case. That motion is at best premature, and the court will not limit what it can consider now without knowing what evidence and arguments will be presented during the case -- particularly at any equitable, remedial stage. Further, insofar as plaintiff and Hartness wish to exclude evidence of her post-2019 earnings from the jury, the court also lacks sufficient evidence to decide that issue. In particular, evidence of her post-2019 earnings may be relevant, depending on the period for which she seeks compensatory damages for emotional distress. Accordingly, the court RESERVES on this motion pending more information from plaintiff and Hartness about the period for which she seeks emotional distress damages.

**5. Exclude from the jury evidence and argument about equitable remedies.**

Plaintiff and Hartness next seek to exclude from the jury any evidence and argument about equitable remedies, including any evidence of Hartness's earnings after she declined the Bureau Director position. Backpay and equitable relief are generally issues to be decided by the court. *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000). However, the court RESERVES for the reasons just stated in motion four.

6. **Request regarding the order of evidence.**

Plaintiff and Hartness further ask the court not to bifurcate the trial, arguing that a single proceeding will be more efficient, avoid Hartness having to testify twice, and conserve resources. Plaintiff and Hartness also assert that evidence of equitable remedies, including back pay, and injunctive relief should be presented to the court in post-trial briefing.

Plaintiff and Hartness have only offered generic reasons for deviating from the court's standard practice of bifurcating liability and damages. Thus, they have not established good cause for the court not to bifurcate the trial. (Preliminary Pretrial Conference Order (dkt. #21) 6.) Moreover, plaintiff's and Hartness's suggestion that jurors might decide not to find liability to avoid a second proceeding on damages is ill-taken. In the court's experience, jurors take their role seriously and strive to reach the correct result, even if doing so might personally inconvenience them. Accordingly, plaintiff and Hartness's motion not to bifurcate the trial is DENIED. As for the court deciding equitable remedies, it is simply more efficient under Fed. R. Civ. P. 1 to take up any evidence in dispute while the jury deliberates on liability, but the court will RESERVE on whether any post-trial briefing is necessary.

7. **Order stating that evidence related to the selection process and Hartness's prior work performance is relevant.**

Plaintiff and Hartness ask the court to rule that the following evidence is relevant: (1) documents from WDMA's selection process; (2) Hartness's past performance

evaluations at WDMA (dkt. ##57-58, 57-67 to 57-73); and (3) Patrick O'Connor's, Hartness's former supervisor, letter of reference. (Dkt. #51-1.)

*First*, as to documents from Hartness's selection process, plaintiff's and Hartness's motion is overbroad because they have only identified broad categories of evidence (e.g., the assessment of candidates' application materials and interviews at all points during the selection process) which they ask this court to find categorically relevant. Regardless, the motion is premature, and may be unnecessary, as WDMA has represented that it expects evidence related to the hiring process to be relevant. Accordingly, the court will RESERVE in part.[1]

*Second*, given plaintiff and Hartness argue she was similarly or better qualified than the men to which WDMA offered higher salaries, her past-performance evaluations are relevant even if the panel did not expressly consider them. That is especially true when Satula was on the hiring panel and appears to have signed many of Hartness's performance reviews. (Dkt. ##57-58, 57-70 to 57-73.) While WDMA fairly points to a lack of evidence that Satula actually considered any of Hartness's performance reviews during the hiring process, that argument goes to the weight of the evidence, not its admissibility. Finally, although Hartness's most recent performance review occurred after she turned down the Bureau Director position, that review covers the period during which she applied and interviewed for the Director position. (Dkt. #57-58.) Accordingly, the court deems

---

[1] Indeed, the court expects that it will address this issue in ruling on WDMA's specific objection to plaintiff's and Hartness's exhibits at the FPTC.

this evidence at least arguably relevant, and the motion is GRANTED in part subject to individual objection to specific evidence.

*Third*, while O'Connor's letter of recommendation in support of Hartness is certainly relevant, defendants assert that plaintiff and Hartness have not established foundation that the letter was received and reviewed by the hiring panel. In Hartness's declaration, she states that she gave each panelist a copy of O'Connor's January 2017 letter during her interview. (Hartness Decl. (dkt. #51) ¶ 5.) While Hartness avers that she no longer has that letter, she asserts that she has an April 2017 recommendation letter from O'Connor that is identical to his January letter, aside from the date, which she attached. (*Id.* ¶¶ 7-9.) The court is inclined to conclude that Hartness's declaration provides sufficient foundation, but it will RESERVE in part and allow the parties to make any additional arguments about the foundation for the letter at the FPTC.

### 8. Exclude evidence and argument regarding Paul Cooke's performance as Bureau Director.

Plaintiff and Hartness move to exclude evidence and argument about how Cooke -- who was offered a higher salary than Hartness and accepted the Bureau Director position -- has actually performed as Director. WDMA asserts that Cooke's experience before accepting the Bureau Director job is relevant, and because plaintiff and Hartness assert that she was better qualified than Cooke, their respective qualifications are critical to determining whether WDMA discriminated against her. Cooke's suitability for the position (e.g., whether he would "hit the ground running" as Director) is certainly relevant. However, whether he actually did so is not, especially given the denial of an opportunity

8

to do the same by Hartness. Thus, the motion is DENIED in part as to Cooke's *pre*-Bureau Director experience and GRANTED in part as to his actual performance as Director.

**II. Defendant's motions in limine (dkt. #92)**

1. **Bifurcate trial into liability and damages phase.**

As discussed above in response to plaintiff's and Hartness's sixth motion in limine, the court will GRANT WDMA's motion to bifurcate the trial into liability and damages phases.

2. **Exclude any statement, argument, evidence or lay witness testimony regarding medical, psychological or psychiatric conditions and causation of those conditions.**

Neither Hartness, her husband, Alan Hartness, nor any other lay witness may render medical opinions about the causation of Hartness's injuries, permanence of injuries, future care and treatment, or future pain and suffering. *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) ("A nonexpert is not permitted to give expert testimony. Wholly lacking in medical knowledge as he was, the plaintiff was incompetent to testify on the causal relation if any between exercise and healthy gums." (citation omitted)); *see also United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (lay opinion testimony is not permissible regarding "specialized explanations or interpretations that an untrained layman could not make" (quotation marks omitted)).

Nevertheless, Hartness, Alan, and other lay witnesses *may* testify about their *own* perception of her physical and mental health before and after WDMA offered her a lower salary than the man it hired, including Hartness's subjective belief as to what she was

9

experiencing, provided that this testimony does not exceed lay opinion under Federal Rule of Evidence 701. Likewise, WDMA may challenge those lay observations on cross-examination. Should the parties need further guidance about the limits of the evidence plaintiff and Hartness may seek to admit related to her damages, they should be sure to address it at the FPTC. Accordingly, WDMA's motion is GRANTED IN PART and DENIED IN PART as described above.

   3. **Dismiss Hartness's claim for injunctive relief because she lacks standing.**

Plaintiff and Hartness do not oppose this motion. Hartness also filed a response stating that she withdraws her claim for injunctive relief in this matter. (Dkt. #124.) Thus, this motion is GRANTED as unopposed.

   4. **Exclude any statement, argument, evidence or testimony about media coverage or statements to the press in this case.**

This motion is GRANTED as unopposed.

   5. **Exclude any statement, argument, evidence or testimony about Hartness's previous performance evaluations and O'Connor's letter of reference.**

The motion is DENIED in part as to Hartness's performance evaluations and RESERVED in part as to O'Connor's letter of recommendation, both for the reasons stated in the court's discussion of plaintiff's seventh motion in limine.

6. **Exclude statements, arguments, evidence or testimony that WDMA had a "historical practice" of "parity" and any testimony or evidence about former Bureau Directors O'Connor's or Lawrence Reed's salaries in 2010 and 2011, or that WDMA had a policy to pay bureau directors the same amount.**

WDMA asserts that evidence of the past Bureau Directors' pay should be excluded because: (1) there is no evidence as to how O'Connor's salary was determined at the time of his hire as Bureau Director; (2) there is no evidence as to how WDMA set Reed's salary in 2010 (which was not his starting salary); (3) the mere fact that O'Connor and Reed had the same salary does not mean that WDMA had a historical practice of paying bureau directors equivalent salaries; (4) O'Connor and Reed were not valid comparators to Hartness; and (5) the salary evidence was more prejudicial than probative. The court agrees with WDMA that there are flaws in this evidence, but those flaws go to the weight of the evidence, not to its admissibility. Accordingly, this motion is DENIED and plaintiff and Hartness may introduce evidence of O'Connor's and Reed's salaries and argue that WDMA had a policy or practice of salary parity.

7. **Exclude argument and evidence about a 2019 assessment of the National Guard's handling of sexual assault.**

This motion is GRANTED as unopposed, with the caveat that plaintiff may use this evidence: (1) for proper impeachment purposes; and (2) subject to discussion outside the jury's presence as to whether defendant has "opened the door," whether at side bar or at a break during the trial.

8. **Exclude statements, arguments and evidence about the history, purpose, importance or intent of Title VII, the role of plaintiff in enforcing Title VII, and any EEOC results.**

Plaintiff and Hartness do not oppose the motion beyond asking that the court incorporate statements about plaintiff's and Hartness's respective roles in the lawsuit and the purpose of Title VII. While the court will incorporate brief descriptions of Title VII as well as plaintiff's and Hartness's roles in pursuing their joint claim in the introductory and liability instructions, it will exclude any other reference to their roles and Title VII. In particular, as stated in the court's summary judgment order, the parties' role in and result of any EEOC proceeding is not admissible at trial. (Dkt. #78, 13 n.7.) Accordingly, this motion is GRANTED in part and DENIED in part.

ORDER

IT IS ORDERED that plaintiff's and Hartness's (dkt. ##96-103), and defendant's (dkt. #92) motions in limine, are GRANTED in part, DENIED in part, and RESERVED in part as set forth above.

Entered this 3rd day of June, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge